1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   AARON ANDERSON,                          No.  2:12-cv-2964 KJN P

12                  Petitioner,

13         v.                                  ORDER and FINDINGS &
                                               RECOMMENDATIONS
14   CONNIE GIPSON,

15                  Respondent.

16

17   Introduction

18         Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas

19   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2008 conviction for inflicting

20   injury on a cohabitant (Cal. Penal Code § 273.5(a)), assault by means of force likely to inflict

21   great bodily injury (Cal. Penal Code § 245(a)(1)), vandalism (Cal. Penal Code § 594(a)), and four

22   prior convictions.  The trial court declared a mistrial as to the charge of resisting a peace officer

23   (Cal. Penal Code § 69) after the jury could not reach a verdict.  Pursuant to the Three Strikes

24   Law, petitioner is serving a sentence of 54 years to life.

25         Petitioner raises the following claims:  1) the trial court erred in failing to hold a

26   competency hearing; 2) the trial court erred in failing to revoke petitioner's pro per status; 3) the

27   trial court erred in permitting petitioner to appear at trial visibly shackled; 4) petitioner was

28   improperly subject to multiple punishment; 5) ineffective assistance of counsel (2 claims); 6) the

                                              1

1    trial court erred in failing to grant petitioner a continuance after granting his motion to represent

2    himself; 7) the trial court erred when it denied petitioner's motion for a mistrial; and 8) the

3    prosecutor interfered with a defense witness.

4         After carefully reviewing the record, the undersigned recommends that the petition be

5    denied for the reasons stated herein.

6    Standards for a Writ of Habeas Corpus

7         An application for a writ of habeas corpus by a person in custody under a judgment of a

8    state court can be granted only for violations of the Constitution or laws of the United States.  28

9    U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

10   application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California,

11   202 F.3d 1146, 1149 (9th Cir. 2000).

12        Federal habeas corpus relief is not available for any claim decided on the merits in state

13   court proceedings unless the state court's adjudication of the claim:

14        (1) resulted in a decision that was contrary to, or involved an
          unreasonable application of, clearly established Federal law, as
15        determined by the Supreme Court of the United States; or

16        (2) resulted in a decision that was based on an unreasonable
          determination of the facts in light of the evidence presented in the
17        State court proceeding.

18

19   28 U.S.C. § 2254(d).

20        Under section 2254(d)(1), a state court decision is "contrary to" clearly established United

21   States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in

22   Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a

23   decision of the  Supreme Court and nevertheless arrives at different result.  Early v. Packer, 537

24   U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

25        Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas court

26   may grant the writ if the state court identifies the correct governing legal principle from the

27   Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

28   case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because

2

1    that court concludes in its independent judgment that the relevant state-court decision applied

2    clearly established federal law erroneously or incorrectly.  Rather, that application must also be

3    unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough

4    that a federal habeas court, in its independent review of the legal question, is left with a 'firm

5    conviction' that the state court was 'erroneous.'") (internal citations omitted).  "A state court's

6    determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

7    jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter,

8    131 S. Ct. 770, 786 (2011).

9         The court looks to the last reasoned state court decision as the basis for the state court

10   judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned decision,

11   "and the state court has denied relief, it may be presumed that the state court adjudicated the

12   claim on the merits in the absence of any indication or state-law procedural principles to the

13   contrary." Harrington, 131 S. Ct. at 784-85.  That presumption may be overcome by a showing

14   that "there is reason to think some other explanation for the state court's decision is more likely."

15   Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

16        "When a state court rejects a federal claim without expressly addressing that claim, a

17   federal habeas court must presume that the federal claim was adjudicated on the merits – but that

18   presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct.

19   1088, 1096 (Feb. 20, 2013).  "When the evidence leads very clearly to the conclusion that a

20   federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de

21   novo review of the claim. Id., at 1097.

22        Where the state court reaches a decision on the merits but provides no reasoning to

23   support its conclusion, the federal court conducts an independent review of the record.

24   "Independent review of the record is not de novo review of the constitutional issue, but rather, the

25   only method by which we can determine whether a silent state court decision is objectively

26   unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Where no reasoned

27   decision is available, the habeas petitioner has the burden of "showing there was no reasonable

28   basis for the state court to deny relief." Harrington, 131 S. Ct. at 784.  "[A] habeas court must

3

1   determine what arguments or theories supported or, . . . could have supported, the state court's

2   decision; and then it must ask whether it is possible fairminded jurists could disagree that those

3   arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at

4   786.

5   Factual Background

6           The opinion of the California Court of Appeal contains a factual summary.  After

7   independently reviewing the record, the undersigned finds this summary to be accurate and

8   adopts it herein:

9           Facts and Proceedings

10          The facts underlying the convictions are largely irrelevant to the
    issues on appeal, but we include them for the purpose of showing
11          the absence of any possible prejudice. In a nutshell, defendant and
    the victim had been living together on and off since 2004, but in
12          February 2007 he was not living with her. They attended the wake
    of defendant's nephew, which left him extremely distraught. The
13          victim drove defendant and his brother to a supermarket near her
    home to drop them off before going to tend to her ill mother. The
14          brother had gone into the store when defendant and the victim
    began to quarrel over her failure to join them for a drink. He hit her
15          behind her right ear and grabbed the car keys, heading for the store.
    As she followed him toward the store, he struck her again, knocking
16          her down.

17          Their quarrel continued inside the store. The victim requested the
    use of the manager's phone to call 911. After she made the call,
18          defendant tried to grab the phone out of her hand. He put his arm
    around her neck and dragged her backward about 15 feet before
19          throwing her to the ground.

20          The victim began to drive off, but defendant was able to get back in
    the car before she left the parking lot. She drove to the nearby home
21          of defendant's grandmother where the police intercepted them.
    Defendant, smelling strongly of alcohol, told the police he could
22          not go to jail because his nephew had just died. When the police put
    him into the patrol car, he kicked out a window. (In light of the
23          mistrial, we omit a description of defendant's struggles with the
    police as they took him into custody.) The victim had a two-by one-
24          inch "painful" contusion behind the ear, bruises, and a lump on her
    head.
25
            Defendant testified. He claimed he was not cohabiting with the
26          victim at the time of the assaults, but admitted being an intermittent
    bed companion. He accused the victim of starting the fight in the
27          car by scratching his neck. He grabbed her in an unsuccessful
    attempt to keep her from getting out of the car, then followed her
28          and pushed her to the ground because he was angry about the

scratch. When he followed her into the store, he pushed her away from the counter to keep her from calling the police. He otherwise did not kick or strike her. When cross-examined about the surveillance video from the supermarket, defendant admitted the video did not show the victim attacking defendant in the car; it showed him on top of her in the car drawing his hand back several times; it showed him standing above her as she lay on the ground outside the market, moving his arms and legs; and it showed him swinging his arms as he stood over her in the store after shoving her to the ground.

(2009 WL 3809633 at *1-2 (2009).)

Failure to Hold Competency Hearing

*State Court Opinion*

The California Court of Appeal was the last state court to issue a reasoned decision addressing this claim. Accordingly, the undersigned considers whether the denial of this claim by the California Court of Appeal was an unreasonable application of clearly established Supreme Court authority.

The California Court of Appeal denied this claim for the reasons stated herein:

Defendant's Competence to Stand Trial

In order to be subject to trial, due process requires a defendant to have a rational understanding of the nature of the proceedings against him and the ability to consult effectively with counsel in preparing the defense. (Indiana v. Edwards (2008) 554 U.S. ---- [171 L.Ed.2d 345, 352] (Edwards).) A trial court must suspend proceedings and conduct a competency hearing whenever there is "substantial evidence of incompetence, that is, evidence that raises a reasonable ... doubt" as to a defendant's competence to stand trial. (People v. Rogers (2006) 39 Cal.4th 826, 847.) Given a trial court's ability to observe a defendant, the court is entitled to deference in deciding whether the circumstances called for a competency hearing, but the failure to hold a hearing in the presence of substantial evidence of incompetence requires reversal of the judgment. (Ibid.) In the same vein, the failure of defense counsel to seek a competency hearing is not determinative but is significant. (Id. at p. 848.) Suicide attempts or ideation "*in combination with other factors* " can be substantial evidence of incompetence. (Ibid., italics added.) Presenting a list of facts on appeal unrelated to a defendant's understanding of the proceedings or ability to assist counsel is inadequate; "a defendant must exhibit more than bizarre, paranoid behavior [or] strange words...." (People v. Ramos (2004) 34 Cal.4th 494, 508.)

Throughout the proceedings, defendant demonstrated extreme emotional strain from the prospect of the lengthy indeterminate life

5

sentence he faced. In the original trial proceedings in October 2007, counsel indicated at the outset that relations with his client were rocky but repairable. On the following day, defendant refused to come to court. Defense counsel reported that "I don't think I can raise things to the level of a doubt to his competency. But I do have some concerns" about defendant not presently taking the anti-depressants previously prescribed for him while in jail, because he was somewhat suicidal. The prosecutor noted there were indications in the jail record of previous suicide attempts, though not whether they were feigned or not. Defense counsel thought defendant was preoccupied and that preoccupation was interfering in their interaction, which might raise a doubt of competence if it worsened. For this reason, he asked for a short continuance to get an evaluation of defendant from professionals with whom he was familiar and who could work quickly. The court and the prosecutor both adverted to defendant's "difficult" personality and high stress level, and the need to avoid giving him any indication that being difficult would result in any delay of the proceedings.

However, defendant appeared in court in the afternoon in jail attire. He asserted that he did not want to be there, that he was not mentally prepared, and he did not understand what was happening. He said that he had stopped taking his medication, and thought the strain of the proceedings might leave him unable to be present throughout them. He also had been having trouble eating and sleeping. The court observed that defendant had become emotional in the discussion of whether the court might strike one of his recidivist allegations, and believed that defendant was simply experiencing the ordinary stress of facing trial (rather than facing an incipient mental breakdown). It therefore intended to proceed with voir dire, and stated "[f]or the record, there is nothing that I can find from my interaction and my observation of Mr. Anderson that would in any[ ]way ... indicate that he doesn't know what was going on ... either today or in the prior proceedings...." As related more fully in part III, after the court then stated that it could not find any basis for restraints, defendant insisted on wearing them during the beginning of voir dire.

On the next trial date, the court announced that it was continuing the proceedings in order to evaluate defendant because he had attempted suicide over the weekend. With the concurrence of defense counsel, the court dismissed the jury panel for good cause.

The court granted a number of additional continuances. Defense counsel informed the court in camera at one of these hearings that he intended to have his outside experts conduct a psychological evaluation of defendant, and he would take whatever course the confidential report indicated.

The case eventually came on for trial in a new department. Defendant requested a substitution of appointed counsel. After hearing lengthy complaints about inadequate investigation of the facts (and inadequacy of his previous representation) and inadequate contact, and the admission from defense counsel of a heated exchange between them on the first day of the original trial

regarding defense counsel's commitment to the case, the court denied the motion. Defendant then said that he wanted to represent himself.

Back on the record, the court told him that the case was proceeding to trial with or without defense counsel. Defendant again asserted his intent to waive his right to counsel. He explained that he felt the outcome of the trial was inevitable and he would rather reach that result on his own than with someone else representing him, and asserted the unfairness of going to prison for life and losing everything else important to him for "push[ing] my girl down," whom he had not intended to hurt. When the court could not get defendant to express his understanding that self-representation precluded an appeal based on his inadequate performance at trial, it refused to accept the waiver before going on to other matters (querying in the course of discussion whether there would be a need to revisit these other matters if defendant waived his right to counsel). Following the lunch recess, the court told defendant it would accept his waiver notwithstanding his refusal to acknowledge that he could not raise the incompetence of his own trial performance on appeal.

Defendant did not participate meaningfully in the voir dire and selection of jurors on the following day. At the start of trial on the second day, the court let defendant know that defense counsel was standing by; defendant did not reply and sat with his head hanging down until the court called the first witness to the stand, at which point he blurted out that he felt "overwhelmed" and asked to be excused. When it came time for him to cross-examine a police officer who responded to the victim's 911 call, he simply asked whether the officer knew that he was facing a life term, and then admitted he did not know how to cross-examine (at which point the court excused the witness). The court called a recess.

Defendant confessed he was legally inadequate, and was feeling an extreme amount of stress. The court again reminded him of the availability of counsel. Although neither the court nor the prosecutor believed defendant was entitled to a continuance, the court recessed the trial until the following Monday to allow defendant time for whatever preparation he could undertake.

When the trial reconvened, defendant continued to complain that his inability to try the case resulted in an unfair trial. He was silent during the examination of a witness testifying about the damage to the police vehicle and did not respond when asked if he wanted to cross-examine. During the direct examination of the victim, he repeatedly interrupted the questioning. (As defendant does not cite to more than one of these instances in his appellate brief, we will not detail them.) According to defendant's own summary of his cross-examination of the victim, "he called her names and pleaded with her."

When the court called the noon recess, defendant had an emotional outburst (apparently directed at the prosecutor) and asked to rescind his waiver of counsel. He also demanded a mistrial. After the

7

recess, defendant apologized for his behavior and again requested a mistrial. At the conclusion of the afternoon's proceedings, the court granted defendant's request to revoke his waiver of counsel and reappointed defense counsel.

Defendant sets forth the following as constituting the substantial evidence of his incompetence to stand trial: the unquestioned evidence of his emotional strain in facing an all-but-inevitable life term without parole (being 42 at the time of sentencing to a 50-year minimum indeterminate sentence), leading to his genuine suicide attempt on the eve of the initial proceedings in this matter; his failure to take any action in his own defense when proceeding in propria persona at the renewed proceedings during voir dire and the examination of the first two police witnesses; and his emotional outbursts during the prosecutor's examination of the victim and his own cross-examination. He acknowledges his trial counsel's failure to express a doubt, but simply relies on the fact that this is not determinative.

Defendant's failure to take action in his own defense at trial does not show anything more than the expected reaction of an unprepared layperson thrust into the complexities of the ill-advised role of self-representation. His suicide attempt or attempts are not sufficient of themselves to give substantial evidence of an inability to understand the proceedings or assist trial counsel meaningfully, as we have noted above. Defendant's emotional distress, far from being substantial evidence of his incompetence, demonstrates he knew far too well what was at stake, including his accurate assessment of the likelihood of his convictions. His outrage at the victim is also rational. While trial counsel at one point was concerned that the level of defendant's emotional preoccupation with the outcome might make him unable to interact meaningfully with counsel, he expressed the intention to seek a confidential evaluation of defendant's mental condition and thereafter did not say anything more on the subject. We will not speculate on appeal either that counsel did not carry out his expressed intention or that he disregarded evidence in this evaluation of incompetence. While this absence of doubt on the part of counsel is not determinative, nothing else in the record suggests a lapse on counsel's part, and the two trial judges were equally convinced that nothing they saw in court gave any doubt of defendant's understanding of the proceedings or of his ability to assist counsel. We therefore reject this claim.

(Id. at *2-4.).

*Summary of Factual Background to Competency Claim*

The California Court of Appeal's description of the facts relevant to this claim is accurate. The undersigned herein describes the relevant background in more detail with citation to the record.

////

8

The first mention in the record of any issue concerning petitioner's mental state is on the morning of Thursday October 18, 2007.  (Reporter's Transcript ("RT") at 34.)  On that date, when jury selection was to begin, petitioner did not appear in court.  (Id.)  The trial judge stated that he was informed by the bailiff that petitioner refused to be transported from the jail to court that morning.  (Id.)  During a break, petitioner's counsel went to the jail to talk to petitioner then reported back to the court.  (Id.)  Counsel stated, "Well, I can say that I don't think I can raise things to the level of a doubt to his competency.  But I do have some concerns.  I do know I can – I'm authorized to disclose that I do know that he has been while in the County Jail on anti-depressant medication in the past."  (Id. at 35.)  Counsel went on to state that petitioner was not taking the medication and that he would like to have petitioner evaluated by the outpatient ward at the jail.  (Id.)  Counsel stated that he was also informed that petitioner had made suicide attempts when he first got into county jail, but he did not think that he was presently suicidal. (Id.)

The prosecutor then indicated that there was some question regarding whether petitioner's past suicide attempts were sincere.  (Id. at 36.)  Petitioner's counsel stated that petitioner was "preoccupied" and "I don't think it's at this point would rise to the level of a doubt but it's a focused preoccupation that clearly stands in the way of our interaction."  (Id.)  Counsel requested a continuance so that he could have petitioner's mental status evaluated.  (Id.)

The trial judge commented that petitioner seemed under stress:

> I think there is a certain level of stress that's apparent to myself anyway when he comes to court and it is obviously because that – part of that stress level is being driven by the amount of time that he faces.

(Id. at 41.)

The trial judge decided to recall the case in the afternoon to see if petitioner would come to court.  (Id. at 44.)

In the afternoon, petitioner appeared with counsel.  (Id. at 46.)  Petitioner told the court that he was not mentally prepared for the trial and he was not ready for trial.  (Id. at 48-49.)  Petitioner later stated that he felt like he was having some type of breakdown.  (Id. at 55.)

1   Petitioner also told the court that he had, on his own, stopped taking his medication.  (Id.)

2          Petitioner's counsel asked the court to continue the case based on petitioner's mental

3   status so that he could have petitioner evaluated by jail services and his own experts.  (Id. at 52.)

4          After further discussion with petitioner, the trial judge stated,

5          For the record, there is nothing that I can find from my interaction
           and my observation of Mr. Anderson that would in any way – that
6          would indicate that he doesn't know what's going on in the
           proceedings either today or in the prior proceedings that we have
7          held during the course of the trial.

8   (Id. at 60)

9          The trial judge ordered that the case would resume on Monday.  (Id. at 70.)

10         On Monday October 22, 2007, petitioner did not appear in court.  (Id. at 71.)  The trial

11  judge stated on the record that petitioner tried to hang himself on Saturday afternoon.  (Id. at 71.)

12  The discussion of this incident in the transcript indicates that the trial court thought that

13  petitioner's suicide attempt was sincere.  (Id. at 72-73.)  The trial judge set a status conference for

14  October 24, 2007.  (Id. at 77.)

15         On October 24, 2007, petitioner did not appear in court.  (Id. at 78.)  The trial judge stated

16  that petitioner was still under psychological evaluation.  (Id.)   The trial judge continued the case

17  to the following day.  (Id. at 80.)

18         On October 25, 2007, petitioner appeared in court.  (Id. at 81.)  The trial judge told

19  petitioner that he had to discharge the jury panel that was going to be used to select petitioner's

20  jury.  (Id.)  The trial judge also noted that petitioner was still under psychological/psychiatric

21  evaluation at the jail.  (Id. at 82.)  The trial judge continued the trial to November 13, 2007.  (Id.)

22  At the October 25, 2007 hearing, petitioner's counsel told the court that he would like to put on

23  the record "ex parte the things that have happened so the record is clear."  (Id. at 83.)  Counsel

24  stated that to disclose these things in open court would violate attorney-client confidentiality.

25  (Id.)  Pages 84 and 85 of the record, containing this information, are sealed.  (Id.)  These sealed

26  pages are not in the court record.

27         Petitioner appeared in court on November 13, 2007.  (Id. at 86.)  Petitioner's counsel

28  could not be present, so the case was continued to the following day.  (Id.)  Petitioner appeared in

1   court on November 14, 2007.  (Id. at 87.)  The trial judge granted the request of petitioner's

2   counsel to reset the trial to November 19, 2007.  (Id.)

3       The trial was continued several times to February 5, 2008.  (Court Transcript ("CT") at

4   14-15.)  It appears that a new trial judge was assigned to the case on this date.  On that morning,

5   petitioner made a Marsden[1] motion.  (RT at 89-102.)  The transcript from this hearing is sealed.

6       Following the denial of the Marsden motion, petitioner made a Faretta[2] motion.  (Id. at

7   105.)  The trial judge discussed with petitioner whether he understood the consequences of self-

8   representation.  (Id. at 107-18.)  During this discussion, petitioner made several lengthy

9   statements indicating his understanding of the proceedings.  The undersigned quotes one of these

10  statements below made after the trial judge advised petitioner that it was seldom a wise decision

11  to represent yourself and that petitioner may have some anger toward his lawyer:

12          No.  I'm not angry at [counsel].  I just don't believe – some lawyers
            are just not for you.  He is not – he says he doesn't have my best
13          interest at heart.  He says he doesn't, and I don't trust him.  There's
            just too many things that he said to me like last night.  He said – he
14          said that he –that he mentioned the same question that I asked him
            about in the preliminary hearing.  He mentioned to me.  I asked him
15          right there.  He told me right there.  He lied to me.  So how can I go
            to trial fighting for my life with somebody like that?
16

17  (Id. at 111-12.)

18      The trial judge delayed ruling on petitioner's Faretta motion until counsel researched the

19  issue of whether petitioner could argue, on appeal, that he was not competent to represent

20  himself.  (Id. at 126.)  During the February 5, 2008 afternoon session, the trial judge advised

21  petitioner that if he represented himself, in all probability he would not be able to argue, on

22  appeal, that he was not competent to represent himself.  (Id. at 128.)  Petitioner indicated that he

23  still wanted to represent himself.  (Id.)  The trial judge then granted the Faretta motion.  (Id. at

24  129-30.)

25      After granting the Faretta motion, the trial judge discussed pretrial matters with petitioner

26  and the prosecutor.  (Id. at 130-57.)  Petitioner's comments indicate that he understood what was

27  ───────────────

28  [1]  People v. Marsden, 2 Cal.3d 118 (1970).
    [2]  Faretta v. California, 422 U.S. 806 (1975).

11

being discussed.  For example, petitioner discussed the circumstances of one of his prior

convictions.  (Id. at 136-37.)  Petitioner also objected and argued when the prosecutor made a

motion that the jury not be told that this was a three strikes case.  (Id. at 141-42.)  Petitioner also

requested the jury be instructed with a lesser included offense for inflicting injury on a cohabitant.

(Id. at 142-43.)  The trial judge also denied petitioner's request to continue the trial.  (Id. at 148-

49.)

On February 6, 2008, the trial judge denied petitioner's renewed motion to continue the

trial.  (Id. at 159-60.)  The trial judge then explained the voir dire process to petitioner.  (Id. at

161-66.)  While petitioner's participation in the voir dire was limited, the transcript does not

indicate any inappropriate behavior by petitioner.  (See Voir Dire Transcript, filed May 3, 2013.)

Petitioner appeared to understand the nature of the proceedings.

Following jury selection, the trial began on February 7, 2008.  After the prosecutor

informed the trial judge of the name of his first witness, petitioner stated, "I feel overwhelmed.  I

can't handle it.  I'd like to be excused."  (RT at 171.)  The trial judge responded, "Mr. Anderson,

we have talked about this at length.  I've indicated to you that [former trial counsel] is available to

assist you, but we need to know that.  Go ahead now, [Mr. Prosecutor]."  (Id.)

During the trial, petitioner objected to the proceedings on occasion.  For example, when

the trial judge asked petitioner if he wanted to review a photograph being introduced as an exhibit

by the prosecutor, petitioner stated, "I don't want to participate in this at all."  (Id. at 182-83.)

Petitioner later blurted out, "It's not a fair trial."  (Id. at 184.)  Petitioner also asked the trial judge

if the prosecutor was going to ask the victim to narrate the videotape taken from the store.  (Id. at

196.)

After he finished cross-examining the victim, petitioner had an emotional outburst

directed at the victim:

> Petitioner:  You are the devil.

> Court:  Mr. Anderson, shut up.

> Petitioner:  You destroy my life like this, man.  You're a fucking
> devil, man.  That you are, man.  And I was hurt and upset about my
> nephew.  That's why this shit happened, man.  It wasn't – I wasn't

1      trying to hurt nobody.  Your nephew got killed man.

2      Court:  Mr. Anderson, I'm about to call –

3      Petitioner:  Got killed man.  You're heartless ass pig.  He got killed,
       man.  Your mother fucking nephew got killed, and that's why this
4      shit happened.

5   (Id. at 276.)

6      Petitioner then made similar comments directed at the prosecutor.  (Id. at 276-77.)

7   Petitioner then asked for a lawyer and was removed from the courtroom.  (Id. at 277.)

8      That afternoon, petitioner apologized for his behavior:  "I just want to apologize for what

9   happened.  I got kind of beside myself.  I was real hurt about the testimony by the victim.  I over-

10  reacted and I apologize to the court.  I'm sorry."  (Id. at 284.)   The trial resumed after petitioner

11  reassured the court that he would behave respectfully.  (Id. at 291-92.)

12     During the prosecutor's questioning of the next witness, petitioner told the trial court that

13  he could not do it himself.  (Id. at 294.)  The trial court then reappointed trial counsel.  (Id.)

14     The undersigned will not summarize this remaining portion of the transcript as it does not

15  contain statements by petitioner because he was represented by counsel.  However, the

16  undersigned notes that after counsel was reappointed, petitioner informed the court that he wanted

17  to testify.  After counsel told the trial judge that he could not advise petitioner regarding whether

18  or not he should testify because there was no ruling on the Beagle-Castro issue, petitioner stated,

19  "Doesn't matter.  My only hope is to speak for myself and get on the witness stand.  I have to try

20  to do it myself.  You're not doing a good job.  I don't have a choice but to testify."  (Id. at 406.)

21  Later, the trial judge asked petitioner if he understood that the prosecutor would ask him about his

22  criminal background.  (Id. at 475.)

23     Court:  You are going to be cross-examined about your testimony.

24     Petitioner:  Yeah, I understand that.

25     Court:   And your criminal past background.  Do you understand
       that?
26
27     Petitioner:  He's just going to ask me have I been arrested before,
       right, and I just answer yes?
28

13

Court:  I've already indicated to your attorney the forum in which these questions are going to be asked.

Petitioner's Counsel:  I think what he's asking Judge is – I had told him that he will be asked, has he been convicted of four felonies – five felonies on this date?  If he says yes, then the sum and substance, the details of those crimes will not be questioned.

Court:  Correct.

Petitioner's Counsel:  If he says no, then the prosecutor can say, well, isn't it true that it was a rape, or it was a battery on a spouse, or it was resisting arrest, those types of things.  So I think that's what he understands.

Court:  And he's going to ask you –

Petitioner:  He's going to ask as far as what kind of crimes that I was arrested for?

Petitioner's Counsel:  If and only if you deny that it took place.

Petitioner:  Okay, okay, all right.  Now I understand.  Yeah, I want to take the stand.

(Id. at 475-76.)

While the undersigned does not summarize petitioner's testimony, he observes that it was coherent.  (See id. at 489-519.)

At his sentencing hearing, petitioner made a lengthy statement which indicated that he understood the nature of the proceedings.  (Id. at 662-66.)

*Legal Standard*

Federal courts have recognized two distinct aspects to competency claims:  (1) a procedural due process claim that may arise where a state court has failed to hold a competency hearing where there was a "bona fide doubt" about the petitioner's competence; and (2) a substantive due process claim, where a petitioner was tried and convicted or sentenced while he was in fact, or "actually," incompetent.  See, e.g., Davis v. Woodford, 384 F.3d 628, 644 (9th Cir. 2004); Williams v. Woodford, 384 F.3d 567, 603–04, 608 (9th Cir. 2004).

For a procedural due process claim regarding the denial of a competency hearing, the Ninth Circuit has opined that under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") it is clearly established Supreme Court precedent that a trial court must sua sponte

14

conduct a competency hearing whenever evidence before the trial court raises a "bona fide doubt" about the defendant's mental competency.  See Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011) (citing Maxwell v. Roe, 606 F.3d 561, 568 (9th Cir. 2010)).  A "bona fide doubt" exists where "a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced a doubt with respect to competency to stand trial."  Maxwell, 606 F.3d at 568 (citation omitted).  "A defendant must show that there was 'substantial evidence' that he was mentally incompetent to stand trial." Davis v. Woodford, 384 F.3d at 644 (quoting Moore v. United States, 464 F.2d 663, 666 (9th Cir. 1972)).

Furthermore, the responsibility to assess a defendant's competency continues throughout trial, and the same "bona fide" standard applies to determine whether additional competency hearings may be required.  Maxwell, 606 F.3d at 568 (citations omitted).  The federal habeas court reviewing such a procedural due process claim may only consider the evidence that was before the trial judge.  Williams v. Woodford, 384 F.3d at 604; United States v. Lewis, 991 F.2d 524, 527 (9th Cir. 1993).  The "inquiry is not whether the trial court could have found the defendant either competent or incompetent, nor whether the reviewing court would find the defendant incompetent."  United States v. Mitchell, 502 F.3d 931, 986 (9th Cir. 2007).  Rather, in reviewing whether a "bona fide doubt" existed, and whether the state trial court's failure to sua sponte institute competency proceedings therefore violated a petitioner's right to procedural due process, the reviewing habeas court considers "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial."  Stanley v. Cullen, 633 F.3d at 860 (citation omitted).

A defendant is considered competent for constitutional purposes where he has a rational and factual understanding of the nature and object of the proceedings against him, has the ability to consult with his lawyer, and has the ability to assist in preparing his defense.  Drope v. Missouri, 420 U.S. 162, 171 (1975).  Although no particular facts necessarily signal a defendant's incompetence, "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior

1    medical opinion on competence to stand trial are all relevant in determining whether further

2    inquiry is required," and "one of these factors standing alone may, in some circumstances, be

3    sufficient." Drope, 420 U.S. at 180.  In addition, a state trial or appellate court's finding that no

4    competency hearing was required is a factual determination entitled to deference unless it is

5    unreasonable within the meaning of § 2254(d)(2).  Mendez v. Knowles, 556 F.3d 757, 771 (9th

6    Cir. 2009); Davis v. Woodford, 384 F.3d at 644.

7        To prevail on a substantive due process claim that a defendant was "actually" incompetent

8    during trial, the defendant must show that "at the time of trial he lacked either sufficient ability to

9    consult with his lawyer with a reasonable degree of rational understanding, or a rational and

10    factual understanding of the proceedings against him." See Williams v. Woodford, 384 F.3d at

11    608 (citing Dusky v. United States, 362 U.S. 402, 402 (1960)).  Furthermore, in considering a

12    substantive due process claim that defendant was not actually competent, a reviewing court may

13    consider facts and evidence that were not before the state trial court.  See id.

14        In the instant action, petitioner raises a procedural due process claim based on the trial

15    court's failure to hold a competency hearing.

16        *Analysis*

17        For the following reasons, the undersigned finds that the California Court of Appeal's

18    finding that the trial judges did not violate petitioner's due process rights by failing to hold a

19    competency hearing was not an unreasonable application of clearly established Supreme Court

20    authority.

21        Although the trial judge did not hold a competency hearing following petitioner's suicide

22    attempt, he continued the trial to November 13, 2007, so that petitioner could receive a

23    psychological/psychiatric evaluation at the jail.  The trial judge also granted counsel's request to

24    have petitioner evaluated by his own mental health expert.  According to petitioner, the

25    evaluation by counsel's expert did not occur.

26        While the record does not contain the results from any mental health evaluation of

27    petitioner, the record contains no evidence that the mental health evaluation concluded that

28    petitioner was unable to proceed.  Petitioner's counsel did not request a competency hearing

1   during this time, although he clearly indicated an awareness of the possible need for one.  The

2   reporter's transcripts from the hearings on November 13 and 14, 2007, also do not suggest that a

3   competency hearing was warranted.   While the additional hearings where the trial was continued

4   to February 2008 are noted on minute orders, nothing in the record indicates that petitioner was

5   not competent at these hearings.

6       When the trial began in February 2008, petitioner clearly understood the nature of the

7   proceedings against him.  While his behavior was disruptive on occasion, it did not demonstrate

8   incompetence.  Petitioner's ability to make a <u>Marsden</u> motion and then a <u>Faretta</u> motion

9   demonstrated his understanding of the proceedings.  As noted above, when representing himself,

10  petitioner requested jury instructions and made arguments regarding his prior convictions.  While

11  the record indicates that petitioner felt overwhelmed and frustrated at times while representing

12  himself, these feelings did not render petitioner legally incompetent.  Nothing in the record

13  following counsel's reappointment suggests that petitioner was not competent.

14      For the reasons set forth above, this claim should be denied.

15  <u>Failure to Revoke Pro Per Status</u>

16      *State Court Opinion*

17      The California Court of Appeal was the last state court to issue a reasoned decision

18  addressing this claim.  Accordingly, the undersigned considers whether the denial of this claim by

19  the California Court of Appeal was an unreasonable application of clearly established Supreme

20  Court authority.

21      The California Court of Appeal denied this claim for the reasons stated herein:

22          Under what defendant admits is a controlling principle of California
            law, a defendant competent to stand trial is also competent to waive
23          his right to counsel, and therefore a court cannot require a higher
            standard of competence to accept the waiver. (<u>People v. Welch</u>
24          (1999) 20 Cal.4th 701, 732 [citing <u>Godinez v. Moran</u> (1993) 509
            U.S. 389, 400-401 (<u>Godinez</u>)].)
25
            More recently, <u>Edwards</u>, <u>supra</u>, 554 U.S. ---- [171 L.Ed.2d 345],
26          held that for a defendant seeking to waive the right to counsel in
            order to litigate with a mental condition falling in the "gray area"
27          exceeding the minimal constitutional standard to stand trial (<u>id.</u> at p.
            345 [171 L.Ed.2d at p. 354] ), a trial court may refuse to accept the
28          waiver on the ground that the mental condition interferes with the

defendant's "capacity to conduct [a] trial defense unless represented." (Id. at p. 345 [171 L.Ed.2d at p. 355].) It distinguished Godinez as involving a defendant competent to stand trial who sought to waive counsel only to enter a guilty plea. (Id. at p. ---- [171 L.Ed.2d at p. 354].) Edwards believed the precedent involving competency to stand trial and the right to waive counsel presupposed the existence of an effective advocate (either in the person of counsel or defendant). (Id. at p. 345 [171 L.Ed.2d at pp. 355-356].) In short, a court may "insist upon representation by counsel for those competent enough to stand trial ... but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." (Id. at p. 345 [171 L.Ed.2d at p. 357].) This ruling postdates the trial in this matter by several months. Nonetheless, defendant asserts the trial court abused a discretion it did not know it possessed when it allowed him to waive counsel for the early part of his trial.

Our Supreme Court's "independent constitutional obligation to interpret" federal law (In re Tyrell J. (1994) 8 Cal.4th 68, 79) is restricted only by a decision of the federal high court that directly decides an issue to the contrary or "the premise from which it necessarily follows" (People v. Whitfield (1996) 46 Cal.App.4th 947, 957). In the absence of any such paramount authority we must follow the rulings of the California Supreme Court. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455; People v. Dunn (1995) 40 Cal.App.4th 1039, 1050; People v. Rooney (1985) 175 Cal.App.3d 634, 644.)

Edwards, as a matter of federal law, now permits a court to restrict a mentally challenged defendant's right to waive counsel. It does not, however, compel a court to restrict the right to waive counsel. Nor, for that matter, does it change the prohibition under state law from interfering with a defendant's absolute right to proceed to trial without counsel if competent to stand trial. We are therefore without the power to apply Edwards to the present case. Having raised the issue in this court, defendant is free to persuade the California Supreme Court to adopt the rule as a matter of state law.

(2009 WL 3809633 at *5.)

*Analysis*

Under the Sixth Amendment, a criminal defendant has the right to waive his right to counsel and represent himself, as long as the waiver is voluntary, knowing, and intelligent. Faretta v. California, 422 U.S. 806, 807 (1975).  In Godinez v. Moran, 509 U.S. 389 (1993), the Supreme Court addressed the constitutional standard for competence to waive the right to the assistance of counsel, an issue it had not considered before.  Godinez, 509 U.S. at 396.  The Supreme Court held that the standard for competence to waive counsel is the same as the standard for competence to stand trial, which was set forth in Dusky v. United States, 362 U.S. 402 (1960).

18

1  _Godinez_, 509 U.S. at 398.  Under the _Dusky_ standard, a defendant is competent to stand trial if he

2  has "sufficient present ability to consult with his lawyer with a reasonable degree of rational

3  understanding" and "a rational as well as factual understanding of the proceedings against him."

4  _Dusky_, 362 U.S. at 402.  The Supreme Court expressly rejected "the notion that competence ... to

5  waive the right to counsel must be measured by a standard that is higher than (or even different

6  from) the _Dusky_ standard."  _Godinez_, 509 U.S. at 398.  It declared that states are free to adopt

7  competency standards "more elaborate than the _Dusky_ formulation," but the Due Process Clause

8  does not impose any additional requirement.  _Id._ at 402.

9          In _Indiana v. Edwards_, 554 U.S. 164 (June 19, 2008), the Supreme Court considered

10  whether the Constitution prohibits a state from insisting on representation by counsel for a

11  defendant whom a state court found mentally competent to stand trial, but not mentally competent

12  to conduct the trial himself.  _Edwards_, 554 U.S. at 167.  The Supreme Court concluded that

13  _Godinez_, the only other Supreme Court case that considered mental competence and self-

14  representation together, did not answer that question.  _Id._ at 172–73.  First, because the defendant

15  in _Godinez_ wanted to waive counsel and plead guilty, the Supreme Court had no occasion to

16  consider his ability to conduct a defense.  _Id._ at 173.  Second, _Godinez_ held only that the

17  Constitution allows a state to permit a "gray-area defendant"—a defendant with "a mental

18  condition that falls in a gray area between _Dusky_'s minimal constitutional requirement that

19  measures a defendant's ability to stand trial and a somewhat higher standard that measures mental

20  fitness for another legal purpose"—to represent himself, but did not address whether a State may

21  deny him that right.  _Id._ at 172–73.

22          The Supreme Court held that "the Constitution permits judges to take realistic account of

23  the particular defendant's mental capacities by asking whether a defendant who seeks to conduct

24  his own defense at trial is mentally competent to do so."  _Edwards_, 554 U.S. at 177–78.  In other

25  words, "the Constitution permits States to insist upon representation by counsel for those

26  competent enough to stand trial under _Dusky_ but who still suffer from severe mental illness to the

27  point where they are not competent to conduct trial proceedings by themselves."  _Id._ at 178.

28          Petitioner claims that the trial judge was constitutionally required to revoke his pro per

19

1  status because of his mental incompetency.  The record described above demonstrates that

2  petitioner was competent when he made his Faretta motion and during the time he represented

3  himself.  While representing himself, petitioner had a rational and factual understanding of the

4  nature and object of the proceedings against him.  As noted above, although petitioner at times

5  felt frustration based on his lack of legal training, this fact did not render him legally incompetent.

6  Because petitioner was competent, the trial judge did not err in granting petitioner's request to

7  represent himself and permitting him to continue to represent himself until he requested

8  reappointment of counsel.

9        Edwards, supra, is not applicable here, because in that case the Supreme Court held that a

10  state *may* impose a higher mental competence standard for self-representation than to stand trial.

11  Edwards did not hold that the Constitution requires a higher standard or that it requires a separate

12  determination of competence to represent oneself.  Edwards, 554 U.S. at 177-78.  There is no

13  clearly established Supreme Court authority standing for the proposition that a state court must

14  revoke pro per status of a "gray area defendant."

15        The denial of this claim by the California Court of Appeal was not an unreasonable

16  application of clearly established Supreme Court authority.  Accordingly, this claim should be

17  denied.

18  Shackling

19        *State Court Opinion*

20        The California Court of Appeal was the last state court to issue a reasoned decision

21  addressing this claim.  Accordingly, the undersigned considers whether the denial of this claim by

22  the California Court of Appeal was an unreasonable application of clearly established Supreme

23  Court authority.

24        The California Court of Appeal denied this claim for the reasons stated herein:

25             At the start of voir dire in the first proceeding in this matter, the
             court questioned its bailiff about the manifest necessity for the
26             restraints on defendant's person. The court concluded it did not find
             any basis for any restraints. Defendant, however, said he wanted the
27             belly chains and shackles. Understandably nonplussed at the
             request, the court allowed him to remain in restraints, but ordered
28             the unshackling of his feet.

20

At the start of the renewed proceedings, the bailiff asked the court just before the lunch recess to address the question of restraints, indicating that counsel wanted them removed but "it doesn't make any difference to defendant whether or not he had restraints on" (which we assume was a reference to the last time the court addressed the issue). Now, however, defendant asserted that he did not pose any threat and voiced objection to the full restraints that the deputies wanted as a matter of course. Obtaining defendant's assurances that he would behave respectfully while in the courtroom (People v. Watts (2009) 173 Cal.App.4th 621, 629-630), the court ruled that defendant did not need any restraints other than being chained to the chair. Defendant expressed his satisfaction with this arrangement.

At one point during the direct examination of a witness, defendant (in the midst of his other outbursts) twice told the court that the chair chain was too tight. The record does not indicate whether or not there was an adjustment of the chain in front of the jury.

In its instructions, the court included the following admonition: "The fact that physical restraints have been placed on Aaron Anderson is not evidence. Do not speculate about the reason, and you must completely disregard this circumstance in deciding the issues in this case. Do not consider it for any purpose or discuss it during your deliberations."

A defendant is subject to physical restraint only upon a finding of manifest need based on affirmative facts. (People v. Vance (2006) 141 Cal.App.4th 1104, 1112.) Defendant argues that there was neither any express finding, nor were there facts that would have supported even an implied finding.

As the facts we have recited indicate, defendant (and counsel, to the extent he was still representing defendant at this point) assented to the trial court's imposition of minimal restraints. The objection had been to full restraints. We do not discern mere acquiescence, as he argues in his reply brief. The record as a whole demonstrates that defendant was quite capable of expressing his dissatisfaction when he desired to do so. He has thus waived the issue of the imposition of the minimal restraints. (People v. Tuilaepa (1992) 4 Cal.4th 569, 583 (Tuilaepa ).) To the extent he called the attention of the jury to his restraints, it is invited error.

In any event, even if waiver and invited error do not bar the issue on appeal, the presence of the minimal restraints is harmless beyond a reasonable doubt. Absent a situation in which the credibility of a heavily shackled defendant plays a critical role in a close case, brief observations of restraints do not warrant reversal. (Tuilaepa, supra, 4 Cal.4th at p. 584; compare People v. Duran (1976) 16 Cal.3d 282, 287, fn.2, 295-296; People v. Soukomlane (2008) 162 Cal.App.4th 214, 232-233; People v. McDaniel (2008) 159 Cal.App.4th 736, 740-741, 746 [all involving close cases in which credibility of shackled defendant critical to defense].) Defendant's protests on

1
2
3
4
5
6
7

> appeal to the contrary, this was not remotely a close case. The jury was already aware of his undisputed outbursts of rage against the victim and the police. The videotape made a mockery of his credibility. The record indicates only a passing reference to the existence of restraints, and nothing affirmatively indicates that the jury actually saw the chair chain, nor does anything indicate that defendant testified in a chair restraint. The extent of the victim's injuries, which spoke for themselves, was the only real issue. Under these circumstances, we may presume the admonition was effective, and therefore the employment of a minimal restraint did not have any prejudicial effect even if the restraint was ordered in error.

8
9

(2009 WL 3809633 at *6.)

10

*Analysis*

11

In the answer, respondent addresses the shackling claim as follows:

12
13
14

> There is no clearly established Supreme Court precedent that would require a finding of a due process violation, especially where, as here, the defendant imposed no objection to the shackling – and actually requested it.  Accordingly, fairminded jurists could agree with the state's denial of this claim.  <u>Richter</u>, 131 S. Ct. at 786.

15

(ECF No. 15 at 19.)

16
17
18
19
20
21

Respondent does not argue that petitioner's shackling claim is procedurally defaulted based on the finding by the California Court of Appeal that petitioner waived this claim by failing to object.  Accordingly, the undersigned will consider the merits of this claim.  <u>See</u> <u>Vang v. Nevada</u>, 329 F.3d 1069, 1073 (9th Cir. 2003) (generally, the statue must assert the procedural default as an affirmative defense to the petition before the district court; otherwise the defense is waived).

22
23
24
25
26
27
28

It is well established that "the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant."  <u>Illinois v. Allen</u>, 397 U.S. 337, 344 (1970); <u>accord</u> <u>Rhoden v. Rowland</u>, 172 F.3d 633, 636 (9th Cir. 1999) (noting that shackles create "an inherent danger that the jury may form the impression that the defendant is dangerous or untrustworthy").  Accordingly, "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial."  <u>Deck v. Missouri</u>, 544 U.S. 622, 629 (2005);

22

1    accord <u>Williams v. Woodford</u>, 384 F.3d 567, 591 (9th Cir. 2004) ("A criminal defendant has a

2    constitutional right to be free of shackles and handcuffs in the presence of the jury absent an

3    essential state interest that justifies the physical restraints." (citations omitted)).

4         However, shackling itself does not entitle petitioner to habeas relief.  Rather, petitioner

5    must also demonstrate that the shackling was "seen by the jury" and there was no "adequate

6    justification" given for the shackling.  <u>See Deck</u>, 544 U.S. at 635; <u>accord</u> <u>Larson v. Palmateer</u>,

7    515 F.3d 1057, 1062 (9th Cir. 2008) ("Visible restraints are therefore not permitted unless the

8    trial court finds that they are necessary while 'taking account of the circumstances of the

9    particular case.'" (citing <u>Deck</u>, 544 U.S. at 632)).

10        If the trial court's imposition of shackles violated petitioner's right to due process,

11   petitioner is not entitled to habeas relief unless the error "'had substantial and injurious effect or

12   influence in determining the jury's verdict.'"  <u>Larson v. Palmateer</u>, 515 F.3d 1057, 1064 (9th Cir.

13   2008) (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993)) (applying <u>Brecht</u> harmless error

14   standard to shackling case).

> To determine whether the imposition of physical restraints constitutes prejudicial error, we have considered the appearance and visibility of the restraining device, the nature of the crime with which the defendant was charged and the strength of the state's evidence against the defendant. <u>See</u> <u>Dyas v. Poole</u>, 317 F.3d 934, 937 (9th Cir. 2003) (per curiam). "[T]he greater the intensity of shackling ... the greater the extent of prejudice," because elaborate physical restraints are more likely to create the appearance of the defendant's dangerousness. <u>See</u> <u>Spain v. Rushen</u>, 883 F.2d 712, 722 (9th Cir. 1989). Hence, physical restraints such as a waist chain, leg irons or handcuffs may create a more prejudicial appearance than more unobtrusive forms of restraint. <u>See</u> <u>id.</u> Similarly, if the defendant is charged with a violent crime, then the risk of prejudice increases, because shackling "essentially brand[s][him] as having a violent nature." <u>Rhoden</u>, 172 F.3d at 637. Concerns about prejudice may be mitigated, however, if the state's evidence against the defendant was "overwhelming." <u>See</u>, 317 F.3d at 937.

25   <u>Id.</u>

26   ////

27   ////

28   ////

1     To clarify petitioner's claim, he is challenging the jury's alleged viewing of him shackled

2  to his chair during the trial.[3]  As noted by the California Court of Appeal, the trial judge revisited

3  the issue of the need for restraints at the start of renewed proceedings at the request of the bailiff.

4  (RT at 124.)  The bailiff stated to the court:

5           Your Honor, I'm not sure if counsel is aware of the – a couple of
            write-ups and incidents that occurred at the jail.  Mr. Anderson's in-
6           take in custody, which I believe was wrong.  February 17th of 2007.
            Mainly the defendant is wishing to or counsel is wishing to have the
7           maximum restraints removed.   Then on behalf of the Sheriff's
            Department, we would be requesting to conduct a security hearing
8           to have remain maximum restraints.   If it doesn't make any
            difference to the defendant whether or not he has restraints on,
9           then –

10  (Id.)

11     The bailiff went on to request that petitioner wear maximum restraints during transport to

12  and from court which was standard operating procedure.  (Id. at 125.)  After petitioner told the

13  trial judge that he would behave respectfully, the trial judge ordered that petitioner would be

14  shackled to the chair only.  (Id.)  Petitioner stated that that would be "fine."  (Id. at 126.)

15     The jury was later instructed regarding the physical restraints:

16           The  fact  that  physical  restraints  have  been  placed  on  Aaron
            Anderson is not evidence.  Do not speculate about the reason, and
17           you must completely disregard this circumstance in deciding the
            issues in this case.  Do not consider it for any purpose or discuss it
18           during your deliberations.

19  (Id. at 536.)

20     It is reasonable to infer from this jury instruction that the jury saw petitioner shackled to

21  his chair.

22     When the trial judge ruled that petitioner must be shackled to his chair, he did not make a

23  specific finding as to why these shackles were necessary.  Nevertheless, the record supported the

24  finding for a need for minimal shackles based on petitioner's behavior in court as well as his

25  apparent misbehavior in the jail.  Assuming the decision that petitioner wear the chair shackles

26  _____

27  [3]   In his opening brief on appeal filed in state court, petitioner argued that the jury saw him
    wearing shackles in the courtroom.  (See Opening Brief filed May 3, 2013 at 13-20.)  Petitioner
    did not argue that the jury saw him wearing shackles during voir dire (which he consented to) or
28  while being transported.

1   was error, it did not have a substantial and injurious effect or influence on the jury's verdict

2   because the evidence against petitioner was strong.  As noted by the California Court of Appeal,

3   the videotape of the incident with the victim "made a mockery" of petitioner's credibility.  The

4   jury was also instructed not to consider petitioner's shackles when deciding the case.  For these

5   reasons, the outcome of the verdict would not have been different had the jury not seen petitioner

6   wearing the shackles.

7         The denial of this claim by the California Court of Appeal was not an unreasonable

8   application of clearly established Supreme Court authority.  Accordingly, this claim should be

9   denied.

10  Multiple Punishment[4]

11        The California Court of Appeal denied this claim for the reasons stated herein:

12            When this matter first came to trial in October 2007, the court
            allowed the prosecution to amend the information to add "a count
13          of a [section] 273.5(a) of the Penal Code, which is basically an
            alternative statement to the count that they charged previously,
14          which was the [section] 245(a)(1) involv[ing] the same victim."
            Nothing in the instructions or argument assigned any one act to
15          either count (presumably because there was a continuous course of
            conduct (People v. Thompson (1984) 160 Cal.App.3d 220, 224-
16          225)), the prosecution simply noting that either the bump or the
            victim's soreness were corporal injuries, and the punch and the
17          push to the ground were with force likely to cause great bodily
            injury.  The probation report recommended staying the assault
18          conviction because the two offenses made up an indivisible
            transaction, a recommendation that trial counsel urged the trial
19          court to follow.  As noted above, the court imposed concurrent
            sentences, but did not elaborate on its reasoning.

20
            Penal Code section 654 precludes multiple punishments where an
21          act or course of conduct violates more than one criminal statute but
            a defendant has only a single intent and objective.  (See People v..
22          Bellacosa (2007) 147 Cal.App.4th 868, 875, fn.2.)  However, a
            defendant harboring multiple objectives in a single course of

23

24  [4]   While respondent addresses this claim in the answer, it is not clear that petitioner actually
    raises this claim.  In the instant action, petitioner raises the claims he raised before the California
25  Supreme Court in his petition for review and habeas corpus petition.  While petitioner raised the
    instant sentencing claim in his direct appeal filed in the California Court of Appeal, he did not
26  raise it in the petition for review.  In an abundance of caution, and because the claim has no merit,
    the undersigned addresses this claim herein.  See 28 U.S.C. § 2254(b)(2) (an application for writ
27  of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to
    exhaust state court remedies).

28

1 | conduct may receive multiple punishments. (People v. Blake (1998)
2 | 68 Cal.App.4th 509, 512.) We review a trial court's express or
  | implied finding on the issue for substantial evidence. (Ibid.)

3 | Defendant contends that, as in People v. Siko (1988) 45 Cal.3d 820,
4 | 826, the People should not be allowed to assign multiple objectives
  | to the distinct acts of violence in his course of conduct against the
  | victim because "[t]here is no showing that [they were] understood
5 | in this fashion at trial." (Ibid.) However, in that case, the jury's
  | verdicts expressly reflected that the convictions for generic child
6 | molestation had their basis in the same acts underlying the
  | convictions for sodomy and rape, foreclosing the People from
7 | seeking to identify other acts as the basis for the generic
  | molestation convictions. (Ibid.) The issue of simultaneous multiple
8 | objectives in a course of conduct was not present.

9 | In contrast, the case at bar does not have any equivalent express
  | determination of defendant's objectives in each of the offenses, nor
10 | is there anything requiring the trial court in assessing the evidence
  | at trial to agree with the probation report's opinion (which may not
11 | have been aware of defendant's admission to a different objective
  | in the store). Absent his claim of estoppel, defendant cannot dispute
12 | the substantial evidence for an implicit finding that the initial attack
  | on his cohabitant grew out of drunken pique at her lack of sufficient
13 | sympathy for his loss, while the attack inside the store was to
  | prevent her from completing her call to 911. We thus reject
14 | defendant's argument.

15 | (2009 WL 3809633 at *7.)

16 |     On direct appeal, petitioner argued that the trial court should have stayed his sentence for

17 | one of his convictions involving the victim instead of sentencing him to concurrent sentences.

18 | Petitioner argued that the trial court's failure to stay one of the sentences violated California Penal

19 | Code § 654.  This claim is not cognizable on federal habeas absent a showing of fundamental

20 | fairness.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("The decision to

21 | impose sentences concurrently or consecutively is a matter of state criminal procedures and is not

22 | within the purview of federal habeas corpus); Christian v. Rhode, 41 F.3d 461, 469 (9th Cir.

23 | 1994) ("Absent a showing of fundamental fairness, a state court's misapplication of its own

24 | sentencing laws does not justify federal habeas relief); Watts v. Bonneville, 879 F.2d 685, 687

25 | (9th Cir. 1989) (holding that petitioner's claim that his sentence violated California Penal Code §

26 | 654 was not cognizable on federal habeas review).

27 |     Petitioner has not demonstrated that the trial court's decision to impose concurrent

28 | sentences versus staying one of the sentences violated state law or was fundamentally unfair.

26

1    Accordingly, this claim should be denied.

2    Ineffective Assistance of Counsel

3        *Legal Standard*

4        To demonstrate ineffective assistance of counsel under Strickland v. Washington, 466

5    U.S. 668, 687 (1984), a defendant must show both that his counsel's performance was deficient

6    and that the deficient performance prejudiced his defense.  A deficient performance is one in

7    which "counsel made errors so serious that counsel was not functioning as the 'counsel'

8    guaranteed by the Sixth Amendment."  Id.  The Supreme Court has explained that, if there is a

9    reasonable probability that the outcome might have been different as a result of a legal error, the

10   defendant has established prejudice and is entitled to relief.  Lafler v. Cooper, 132 S. Ct. 1376,

11   1385–86 (2012).  Thus, petitioner must show that defense counsel's representation was not within

12   the range of competence demanded of attorneys in criminal cases, and that there is a reasonable

13   probability that, but for counsel's ineffectiveness, the result would have been different.  See Hill

14   v. Lockhart, 474 U.S. 52, 57 (1985).

15       An ineffective assistance of counsel claim should be denied if the petitioner fails to make

16   a sufficient showing under either of the Strickland prongs.  See Strickland, 466 U.S. at 697

17   (courts may consider either prong of the test first and need not address both prongs if the

18   defendant fails on one).

19       In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

20           The question "is not whether a federal court believes the state
             court's determination" under the Strickland standard "was incorrect
21           but whether that determination was unreasonable - a substantially
             higher threshold." And, because the Strickland standard is a general
22           standard, a state court has even more latitude to reasonably
             determine that a defendant has not satisfied that standard.
23

24   Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citations omitted); see also Runningeagle v.

25   Ryan, 686 F.3d 758, 775 (9th Cir. 2012).

26       *Alleged Ineffective Assistance by Attorneys Nichols and Kappos*

27       Petitioner alleges that attorneys Nichols and Kappos were ineffective in advising him

28   regarding whether to accept a plea bargain.  The Sacramento County Superior Court was the last

state court to issue a reasoned decision addressing this claim.

Following an evidentiary hearing, the Sacramento County Superior Court denied this claim for the reasons stated herein:

> Background
>
> On March 29, 2011, Petitioner filed a petition for writ of habeas corpus arguing:   (1) trial counsel Linda Nichols and Stephanie Kappos were ineffective for failing to conduct pre-trial investigation and properly advise Petitioner regarding his prison exposure and whether he should accept a plea bargain offer; (2) the trial court made errors resulting in a denial of Petitioner's right to a fair trial; (3) the prosecutor engaged in misconduct; and (4) appellate counsel was ineffective for failing to raise these claims on appeal.  On June 22, the Court appointed counsel for petitioner, and ordered Respondents to show cause on the issues of whether trial counsel had advised Petitioner that the prosecutor could not file additional prior strike conviction allegations and whether counsel rendered ineffective assistance of counsel by advising Petitioner not to accept the plea offer for a six-year prison sentence.   The remaining claims in the petition were denied.
>
> On September 2, the Court ordered that Chief Assistant Public Defender Steven Lewis's declaration and the Public Defender's file in case number 07F01701 be released to both Petitioner and Respondent.
>
> On October 20, Respondent filed a return asserting that Ms. Nichols and Ms. Kappos advised Petitioner to accept the plea bargain offer, but that Petitioner refused.  In addition, Respondent claimed that neither Ms. Nichols nor Ms. Kappos ever advised Petitioner that the prosecutor could not file additional strike convictions.  Attached to the return were the declarations of Ms. Kappos and Chief Assistant Public Defender Steven Lewis.   Respondent also asserted that Petitioner had not shown prejudice even if counsels' conduct was unreasonable because he had not shown that he would have accepted the plea bargain if he had been property advised nor that the Court would have accepted the plea bargain, given Petitioner's criminal history.  Finally, Respondent argued that if counsel was ineffective, the remedy is set forth in In re Alvernaz (1992) 2 Cal.4th 924.
>
> On November 29, Petitioner filed a traverse asserting that Mr. Lewis's declaration contained hearsay and that Ms. Kappos's declaration did not affirmatively state she advised Petitioner the prosecutor could amend the complaint to allege additional strike prior convictions.  He re-asserted the allegations of the petition that both Ms. Nichols and Ms. Kappos affirmatively advised Petitioner the prosecutor could not charge additional strikes.  He contends that, had he known his true exposure was 50 years to life imprisonment based on his prior strikes, he would have accepted the six year prison term offer.  Further, he contends the trial court likely would have approved the plea and immediately sentenced

28

Petitioner as there would have been no cause for any investigation that would have resulted in the discovery of the additional strikes. Lastly, Petitioner claimed the proper remedy is not merely to order a retrial, as such a remedy would not cure the defect, but rather to reinstate only the unamended complaint.

On January 20, 2012, the parties appeared at an evidentiary hearing. The parties stipulated that Linda Nichols was permanently unavailable due to medical issues.   Steven Lewis, Stephanie Kappos, Robert Martin, Hayes Gable and Petitioner testified.  The parties filed additional briefs on February 16, March 1 and 2.

Discussion

To show constitutionally inadequate representation of counsel, a defendant must demonstrate that counsel's representation fell below an objective standard and that counsel's failure was prejudicial to the defendant.  (In re Alvernaz (1992) 2 Cal.4th 924, 937.)  Actual prejudice must be shown, meaning that there is a reasonable probability that, but for the attorney's error(s), the result would have been different.  (Strickland v. Washington (1984) 466 U.S. 668, 694.)   The petitioner has the burden of proof to show he received ineffective assistance of counsel as a "demonstrable reality" and not mere speculation.   (People v. Karis (1988) 46 Cal.3d 612, 656.)

ADVICE BY COUNSEL

In case number 07F01701, Petitioner was originally charged with three felonies and one prior strike conviction.  On March 5, 2007, Petitioner was offered a six-year term if he pled guilty and admitted the prior strike conviction.  Petitioner rejected the offer.  On May 7, 2007, the matter was set for a preliminary hearing.  On May 10, 2007, the prosecutor prepared a motion to amend the complaint to include three additional prior strike convictions; the motion was granted.  Thereafter, Petitioner was convicted following a jury trial and he was sentenced to an indeterminate term of 50 years to life under the Three Strikes Law, consecutive to a determinate term of four years in state prison.

Petitioner testified that while the 6-year offer was open, he asked attorney Linda Nichols whether his case could be amended to include additional strikes.  According to Petitioner, Ms. Nichols told Petitioner that since all of the felonies arose from a single case, they constituted only one strike for purposes of the Three Strikes Law.   As Ms. Nichols was unavailable to testify, Respondent referenced in evidence contents of the Public Defender file, which indicated Ms. Nichols knew that Petitioner had four convictions arising out of the 1990 case.  Steven Lewis testified regarding the general practices and training of attorneys in the Public Defender's office and concluded that Ms. Nichols likely advised Petitioner correctly:   That, in fact, the four convictions did qualify as four separate prior strikes.

On April 2, 2007, while the prosecutor's 6-year offer was still

pending, the Public Defender declared an overload and the Conflict Criminal Defenders was appointed.  Petitioner's case was assigned to attorney Stephanie Kappos.  Petitioner testified that Ms. Kappos also informed Petitioner that he could not be charged with more than one strike for crimes occurring at the same time.  However, Ms. Kappos testified to the contrary, stating that she never told Petitioner the prosecutor could not file additional strikes; and that she specifically told him that the prosecutor *could* do so.

At a <u>Marsden</u> hearing on February 5, 2008, immediately prior to trial (at which time Petitioner was represented by Robert Saria), Petitioner made reference to prior counsel Ms. Nichols and Ms. Kappos both informing him the prosecutor could not amend the information to charge additional strikes.  However, those charging allegations were made after the prosecutor discovered the additional strikes, charged them, and clearly signaled that the case could not be resolved pre-trial.  By that time, Petitioner was already regretful of his decision to reject the 6-year offer.  The Court finds the testimony of Ms. Kappos to be credible.  Petitioner has not shown that Ms. Kappos gave him advice that was incorrect or unreasonable.

Whether Ms. Nichols incorrectly advised Petitioner is a closer question because she is medically unavailable to testify as to the matter.  Petitioner's claim that *two* lawyers each independently gave him identically incorrect legal advice is improbable, and indeed, the Court has determined Ms. Kappos did not do so.  The Court concludes further, based on the testimony of Mr. Lewis and review of Ms. Nichol's file notes, that Ms. Nichols did not misinform Petitioner about the fact additional strike convictions could be alleged against him.

PREJUDICE

Even if counsel *had* given petitioner improper advice regarding a plea bargain offer, he must show resulting prejudice.  Thus petitioner must show that he would have accepted the 6-year plea bargain if he had been correctly advised and that the plea would have been accepted by the court.  (<u>Alvernaz</u>, <u>supra</u>, 2 Cal.4th at 937.)

  Petitioner Would Not Have Accepted the Offer

Although he testified he would have accepted the offer if correctly advised by counsel, Petitioner's testimony is not persuasive.  First, the Public Defender's file includes the contemporaneous notes made by Ms. Nichols, which state that on March 22, 2007, Petitioner would have accepted a two-year prison term.  On April 2, Petitioner wanted to "fight [the] case."  Similarly, Ms. Kappos testified that Petitioner would only plead guilty if he would be sentenced to one year in the county jail.  He further expressed the belief he would be acquitted.  Petitioner rejected the prosecutor's offer even after receiving correct advice from Kappos.

Additional relevant information included that in 2004, Petitioner

was charged with three felonies *and it was alleged he had four prior strike convictions*.   Although facing the possibility of an indeterminate sentence under the Three Strikes Law, Petitioner was able to resolve the case as a misdemeanor.  As a result of the 2004 case, Petitioner was actually aware that four prior strike convictions could be alleged.  He was also keenly aware of the *possibility* of a misdemeanor resolution to domestic violence charges.  Therefore, when presented with the offer of a six-year prison term, Petitioner refused it, hoping instead to receive a two-year offer or, better yet, one year in the county jail.   When such an offer was not forthcoming, Petitioner was willing to risk a jury trial based on his belief that a jury would acquit him of the 2007 charges.  Petitioner's belated claim that he thought the circumstances had changed based on the decision in <u>People v. Burgos</u> (2004) 117 Cal.App.4th 1209, is unconvincing as <u>Burgos</u>  is factually and legally dissimilar to Petitioner's case.

As Petitioner received correct advice from Ms. Kappos and still rejected the prosecutor's offer, continuing to believe that a better offer was forthcoming and/or that he would prevail at trial, Petitioner has not shown that any prejudice resulted from Nichol's incorrect advice.

 The Court Would Not Have Approved the Plea

Moreover, even if Petitioner had shown he would have accepted the 6-year plea offer, he has not shown a reasonable likelihood the court would have approved the plea.  Petitioner presumes that had he accepted the plea, the court would have proceeded to sentence Petitioner *immediately* without a pre-sentence probation report. Assistant Public Defender Robert Martin testified that between 2009 and 2011, less than 10 percent of cases in domestic violence court were disposed of without a probation report and only those without outstanding issues relating to the victim or restitution. Even fewer cases were disposed of without a probation report in 2007, when Petitioner's case was pending.  In Petitioner's case, it is unclear whether there were any outstanding victim issues. However, as Petitioner was charged with vandalism, there was certainly a potential restitution issue.   In fact, Petitioner was ultimately ordered to pay victim restitution for damage done by vandalism.  [Footnote one.]

[Footnote one:   Although the abstract of judgment indicates restitution in the amount of $661.82 was ordered for the victim of the domestic violence charge, the probation report states that the victim did not respond with a financial statement of less and that the Sacramento Police Department sustained loss for vehicle damage in the amount of $661.82.]

In light of the outstanding victim and restitution issues and the unlikely prospect that Petitioner would have been immediately sentenced, it is highly likely a probation report would have been ordered.   At that time, Petitioner's prior strikes would certainly have been discovered (as they were by the prosecutor immediately

31

1    after the case was set for preliminary hearing).  Having knowledge
2    of Petitioner's four prior strike convictions, the prosecutor would
     certainly have moved to amend the information at that time (see
3    Penal Code § 995.9(5)), and the Court almost certainly would not
     have approved the plea bargain.  Therefore, Petitioner has not
4    shown he was prejudiced even *if* trial counsel's representation had
     been deficient.
5

6    (Sacramento County Superior Court order denying state habeas petition filed May 3, 2013.)

7          On February 27, 2014, respondent lodged the transcript from the January 20, 2012

8    evidentiary hearing in state court.  After reviewing the transcript, the undersigned finds that the

9    Superior Court's summary of testimony is accurate.

10         The Sixth Amendment right to counsel extends to the plea bargaining process.  Lafler v.

11   Cooper, 132 S. Ct. 1376, 1384 (2012).  Criminal defendants are entitled to the effective assistance

12   of competent counsel during plea negotiations.  Lafler, 132 S. Ct. at 1384.  "If a plea bargain has

13   been offered, a defendant has the right to effective assistance of counsel in considering whether to

14   accept it."  Id. at 1387.  Counsel cannot be required to predict accurately what the jury or court

15   might find if the case goes to trial, but he must give the defendant the tools needed to make an

16   intelligent decision.  Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002).  In order to show

17   prejudice, "a defendant must show the outcome of the plea process would have been different

18   with competent advice."  Lafler, 132 S. Ct. at 1384.  When a defendant contends that counsel's

19   defective advice caused him to reject a plea offer and proceed to trial, he must show that "but for

20   the ineffective advice of counsel there is a reasonable probability that the plea offer would have

21   been presented to the court ( i.e., that the defendant would have accepted the plea and the

22   prosecution would not have withdrawn it in light of intervening circumstances), that the court

23   would have accepted its terms, and that the conviction or sentence, or both, under the offer's

24   terms would have been less severe than under the judgment and sentence that in fact were

25   imposed."  Id. at 1385.

26         In habeas, the factual determinations of the state court following the evidentiary hearing

27   are presumed to be correct.  28 U.S.C. § 2254(e)(1).  The burden is on the petitioner to rebut the

28   presumption by clear and convincing evidence.  Id.; see Sophanthavong v. Palmateer, 378 F.3d

859, 867 (9th Cir. 2007) ("The evidence presented by [petitioner] to the district court is the same proof that the state court found was not believable.  [The petitioner] did not submit any evidence in the district court to rebut the presumption that the state court's findings of fact and credibility determinations are correct as required by § 2254(e)(1) … [B]ecause the state court conducted an evidentiary hearing …, we are required to defer to the state court's credibility findings."); see also Marshall v. Londberger, 459 U.S. 422, 434 (1983) (holding that Title 28 U.S.C. § 2254(d) gives federal habeas corpus courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state court, but not by them.");  Brown v. Poole, 337 F.3d 1155, 1160 n.2 (9th Cir. 2003) ("We could indeed defer to all factual findings of the state court that are reasonable 'in light of the evidence presented in the state court proceedings.'") (quoting Greene v. Henry, 302 F.3d 1067, 1072 (9th Cir. 2002)); Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir. 2004) ("[A] federal court may not second guess a state court's fact-finding process unless, after review of the state court record, it determines that the state court was not merely wrong, but actually unreasonable.").

        The writ can only be granted if the state court's adjudication of the proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding."  28 U.S.C. § 2254(d)(2); see Miller-El v. Cockrell, 537 U.S. 322, 348 (2003) ("To secure habeas relief, petitioner must demonstrate that a state court's finding … was incorrect by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and that the corresponding factual determination was 'objectively unreasonable' in light of the record before the court.")

        Petitioner has not demonstrated that the fact-finding process employed by the Superior Court was defective, and the record demonstrates to the contrary.  Thus, this court cannot second-guess the Superior Court's findings of fact and credibility.  The state court's finding that attorneys Nichols and Kappos did not misinform petitioner regarding whether additional strikes could be filed is supported by the record.  The Superior Court's rejection of petitioner's testimony that he

1   would have accepted the six year offer had he been properly advised is supported by the record.[5]

2   The Superior Court's finding that the trial court would not have accepted petitioner's plea of six

3   year had it been made is also supported by the record.

4          Applying these factual findings to the legal standard for ineffective assistance of counsel,

5   the Superior Court's finding that counsel were not ineffective and, even if they were, petitioner

6   failed to demonstrate prejudice, was not an unreasonable application of clearly established

7   Supreme Court authority.  Accordingly, this claim of ineffective assistance of counsel should be

8   denied.

9          Petitioner has filed a motion requesting an evidentiary hearing as to the instant claim of

10  ineffective assistance of counsel.  Petitioner also apparently seeks to conduct discovery.

11  Petitioner appears to request that attorney Nichols be called to testify at the evidentiary hearing.

12  At the January 20, 2012 evidentiary hearing, the parties stipulated that attorney Nichols was

13  unavailable because she had retired due to medical reasons.  (January 20, 2012 transcript at 27-

14  28.)  The day before the evidentiary hearing, attorney Nichols went to the hospital and was

15  unavailable to testify.  (Id. at 28.)

16         Federal habeas review under 28 U.S.C. § 2254(d)(1)  "is limited to the record that was

17  before the state court that adjudicated the claim on the merits."  Cullen v. Pinholster, 131 U.S.

18  1388, 1398 (2011); see also Gulbrandson v. Ryan, 738 F.3d 976, 994 (9th Cir. 2013) (when a

19  state court has denied habeas claims on their merits, Pinholster precludes "further factual

20  development of these claims" through an evidentiary hearing to determine whether Section

21  2254(d)(1) or (d)(2) is satisfied.)  Accordingly, petitioner's request for an evidentiary hearing

22  must be denied.

23         Assuming the holding of Pinholster does not apply to discovery in habeas cases, petitioner

24  has not shown good cause for this request.

25  _____

26  [5]  At the evidentiary hearing, the prosecutor stated that the victim of the previous domestic
     violence charge that had been reduced to a misdemeanor was Ms. Pace, the victim in the current

27  offense.  (Transcript of January 20, 2012 evidentiary hearing at 83.)  The prosecutor suggested
     that that previous case was reduced to a misdemeanor because Ms. Pace did not cooperate with

28  the prosecution, and that petitioner thought she would again not testify in the present case.  (Id.)

1     *Alleged Ineffective Assistance by Attorney Saria*

2          Petitioner raised this claim only in his habeas corpus petition filed in the California

3     Supreme Court.  The California Supreme Court denied this claim without comment or citation.

4     Accordingly, the undersigned independently reviews the record to determine whether the denial

5     of this claim by the California Supreme Court was an unreasonable application of clearly

6     established Supreme Court authority.

7          Petitioner alleges that the attorney who represented him at trial, Mr. Saria, was ineffective

8     on several grounds.[6]  Petitioner alleges that Mr. Saria failed to adequately investigate the case.  In

9     particular, petitioner alleges that the defense investigator failed to interview petitioner and the

10    victim prior to trial.  (ECF No. 1 at 74.)  Petitioner alleges that Mr. Saria did not do anything to

11    prepare a defense.  (Id. at 78.)

12         Petitioner alleges that when he first met Mr. Saria, he told petitioner that his case was a

13    misdemeanor and that he could probably get petitioner one year in county jail at the preliminary

14    hearing.  (Id. at 74.)  Petitioner is apparently claiming that Mr. Saria was ineffective for failing to

15    get petitioner an offer of a misdemeanor and one year in county jail.

16         Petitioner also alleges that during his cross-examination of the victim at the preliminary

17    hearing, Mr. Saria asked, "From the time you got out of the car, did petitioner ever hit, kick or

18    punch you?"  (Id.)  Petitioner alleges that the victim responded, "no."  (Id.)  Petitioner claims that

19    the transcript from the preliminary hearing did not contain this important question and answer.

20    (Id.)  Petitioner alleges that when he brought this omission to the attention of Mr. Saria, he told

21    petitioner that he did not remember asking this question.  (Id. at 75.)

22         Additionally, petitioner alleges that Mr. Saria was ineffective for failing to move to have

23    petitioner declared incompetent.  (Id.)  Petitioner alleges that Mr. Saria did not have him

24    psychologically evaluated, as Mr. Saria told the court he would do.  (Id. at 76.)

25         Petitioner also alleges that on February 14, 2008, Mr. Saria attempted to assault petitioner

26    in the courtroom after the jury had left for the day.  (Id. at 78.)

27    _____

28    [6]  Respondent's answer does not address this claim of ineffective assistance of counsel.

1    The undersigned first considers petitioner's claim that Mr. Saria failed to adequately

2    investigate his case.  The only specific investigation petitioner alleges Mr. Saria failed to conduct

3    is having the defense investigator talk to petitioner and the victim.  Petitioner does not discuss

4    what information he could have given the defense investigator prior to trial that would have aided

5    his defense.  For this reason, the undersigned finds that petitioner has not demonstrated that he

6    was prejudiced by Mr. Saria's alleged failure to have the investigator talk to petitioner prior to

7    trial.

8    The issue of the investigator's alleged failure to interview the victim prior to trial was

9    addressed at the February 5, 2008 Marsden hearing.  A copy of the transcript from this hearing is

10   attached to petitioner's July 25, 2013 motion for an evidentiary hearing.  (ECF No. 25 at 8-21.)

11   At the Marsden hearing, Mr. Saria addressed petitioner's claim that the defense investigator had

12   not spoken with the victim prior to trial.  Mr. Saria told the court that attempts to speak with the

13   victim had failed.  (Id. at 18.)

14   Petitioner does not address Mr. Saria's representation at the Marsden hearing that attempts

15   to talk to the victim prior to trial failed.  Moreover, petitioner has not demonstrated how the

16   defense would have been aided had the investigator talked to the victim prior to trial.  For these

17   reasons, the undersigned finds that petitioner has failed to demonstrate prejudice as to this claim.

18   Petitioner next argues that Mr. Saria was ineffective for failing to have his case reduced to

19   a misdemeanor, as he allegedly claimed he would.  The record indicates that petitioner's case had

20   been made a Three Strikes case when Mr. Saria was appointed.  (See CT at 6-7 (minute orders

21   reflecting Three Strikes case when Mr. Saria appointed on May 31, 2007; preliminary hearing

22   continued to June 29, 2007.)  Therefore, by the time Mr. Saria was appointed to represent

23   petitioner, having the case reduced to a misdemeanor was not an option because it had been made

24   a Three Strikes case.  Because there is no evidence that Mr. Saria would have been able to obtain

25   a plea bargain reducing petitioner's case to a misdemeanor, the instant claim of ineffective

26   assistance of counsel is without merit.  See Eisemann v. Hebert, 401 F.3d 102, 109 (2d. Cir.

27   2005) ("[T]he Supreme Court has indicated that the failure to obtain a plea bargain is not

28   evidence of ineffective assistance of counsel when the record does not contain evidence that one

36

1  might have been offered.")

2    At the <u>Marsden</u> hearing, Mr. Saria also addressed petitioner's claim regarding the

3  statements missing from the preliminary hearing transcript.  Mr. Saria told the court that he had

4  no recollection of asking the question alleged by petitioner.  (ECF No. 25 at 17.)  Mr. Saria stated

5  that it was "nearly impossible" to augment a transcript from a preliminary hearing.  (<u>Id.</u> at 18.)

6    It is unlikely Mr. Saria would have been able to successfully augment the preliminary

7  hearing transcript based on petitioner's recollection of Mr. Saria asking the victim whether

8  petitioner assaulted her after they left the car.  Moreover, the videotape from the store showed

9  petitioner assaulting the victim after they left the car.  For these reasons, the undersigned finds

10  that petitioner has failed to demonstrate prejudice based on Mr. Saria's failure to have the

11  preliminary hearing transcript augmented.

12    Petitioner's claim alleging that Mr. Saria was ineffective for moving to declare him

13  incompetent is also without merit.  The record set forth above in the section addressing

14  petitioner's claim that the trial court failed to hold a competency hearing does not demonstrate

15  that petitioner was incompetent.  The undersigned need not address this claim further.

16    Regarding petitioner's claim that Mr. Saria attempted to assault him, even assuming this

17  claim to be true, petitioner has not demonstrated how this resulted in ineffective assistance of

18  counsel.  Assuming Mr. Saria did attempt to assault petitioner, petitioner has not demonstrated

19  that Mr. Saria was otherwise ineffective in his representation.  Accordingly, this claim should be

20  denied.

21    After independently reviewing the record, the undersigned recommends that these claims

22  of ineffective assistance of counsel be denied.

23  <u>Failure to Grant Continuance</u>

24    Petitioner raised this claim only in his habeas corpus petition filed in the California

25  Supreme Court.  The California Supreme Court denied this claim without comment or citation.

26  Accordingly, the undersigned independently reviews the record to determine whether the denial

27  of this claim by the California Supreme Court was an unreasonable application of clearly

28  established Supreme Court authority.

1   Petitioner alleges that the trial court violated his rights by refusing to grant him a

2   continuance after granting his <u>Faretta</u> motion.  Petitioner argues that he needed a continuance in

3   order to research how to pick a jury, conduct an investigation, generally research his case and

4   review discovery.

5   Trial courts are accorded broad discretion on matters regarding continuances.  <u>See</u> <u>Morris</u>

6   <u>v. Slappy</u>, 461 U.S. 1, 11–12 (1983); <u>Ungar v. Sarafite</u>, 376 U.S. 575, 589 (1964).  The denial of

7   a continuance constitutes an abuse of discretion when the trial court arbitrarily insists "upon

8   expeditiousness in the face of a justifiable request for a delay."  <u>Morris</u>, 461 U.S. at 11–12.  In

9   <u>Armant v. Marquez</u>, 772 F.2d 552, 556 (9th Cir. 1985), the Ninth Circuit recited the four factors

10   used to determine whether the trial court abused its discretion in denying a requested continuance:

11   (1) the degree of diligence by the petitioner prior to seeking the continuance; (2) whether the

12   continuance would have served a useful purpose; (3) whether the continuance would have

13   inconvenienced the court or the prosecution; and (4) the amount of prejudice suffered by the

14   petitioner.  These factors are considered together, and the weight accorded any one factor depends

15   on the circumstances of each case.

16   "At a minimum, however, in order to succeed, the [petitioner] must show some prejudice

17   resulting from the court's denial."  <u>See</u> <u>Armant</u>, 772 F.2d at 556–57; <u>see</u> <u>also</u> <u>Gallego v.</u>

18   <u>McDaniel</u>, 124 F.3d 1065, 1072 (9th Cir. 1997) (petitioner must demonstrate that denial of

19   continuance caused actual prejudice).

20   The undersigned first considers whether petitioner was diligent in his efforts to ready his

21   defense prior to trial.  <u>U.S. v. Flynt</u>, 756 F.2d 1352, 1358-59 (9th Cir. 1985).  Because petitioner

22   made his request for the continuance on the day the trial judge granted his <u>Faretta</u> motion, the

23   undersigned cannot find that petitioner was not diligent in his efforts to ready his defense prior to

24   trial.  In other words, this is not a case where petitioner had been representing himself for some

25   time before requesting a continuance.

26   Granting the continuance would have inconvenienced the court and the prosecution

27   because the request came on the eve of trial.

28   ////

1    Consideration of whether the continuance would have served a useful purpose is related to

2    consideration of the prejudice factor.  The undersigned considers these factors taking into account

3    that Mr. Saria was reappointed to represent petitioner on February 11, 2008.

4    Before Mr. Saria was reappointed, the jury was chosen and the following witnesses were

5    called:  Officer Bercerra, Frank Williams and the victim.  Officer Bercerra was the "victim" of

6    the resisting a peace officer charge, on which the jury could not agree.  (Id. at 181-87; CT at 107.)

7    While Officer Bercerra testified regarding his conversation with the victim after petitioner's arrest

8    as well as witnessing petitioner kick out the police car window, the focus of his testimony

9    concerned the circumstances surrounding the resisting a peace officer charge.  (RT at 174.)  Frank

10   Williams worked for the City of Sacramento General Services Fleet Division.  (Id. at 223.)  He

11   testified regarding the cost of the damage to the window petitioner kicked out of the police car.

12   (Id. at 223.)

13   Because petitioner was not convicted of the charge involving Officer Becerra, petitioner

14   was not prejudiced as a result of the trial judge's failure to grant a continuance as to this charge.

15   Because petitioner does not seriously dispute the damage, including the amount, that he did to the

16   police car, the undersigned finds that he was not prejudiced by the trial judge's failure to grant a

17   continuance as this charge.  Because the trail judge permitted Mr. Saria to recall the victim as a

18   witness following his reappointment, petitioner was not prejudiced as a result of the trial judge's

19   failure to grant a continuance as to this charge.

20   Because the evidence against petitioner involving the charges against the victim was

21   strong, i.e., the videotape combined with the victim's testimony, it is unlikely that the outcome of

22   the trial would have been different had petitioner been able to go to the law library and research

23   voir dire prior to picking the jury.

24   Petitioner also does not demonstrate that his defense following Mr. Saria's reappointment

25   was prejudiced in any way as a result of the trial judge's failure to grant his request for a

26   continuance.

27   After independently reviewing the record, the undersigned finds that the denial of this

28   claim by the California Supreme Court was not an unreasonable application of clearly established

39

1    Supreme Court authority.  Accordingly, this claim should be denied.

2    Denial of Motion for a Mistrial

3        In his habeas corpus petition filed in the Sacramento County Superior Court, petitioner

4    argued that the trial court erred in denying his motion for mistrial.  The Sacramento County

5    Superior Court denied this claim on grounds that it should have been raised on appeal.  (See

6    Petition for Writ of Habeas Corpus filed in the California Supreme Court; Superior Court Order

7    to Show Cause at 3 (attached as exhibit)).  The California Supreme Court denied petitioner's

8    habeas petition without comment or citation.

9        "Where there has been one reasoned state judgment rejecting a federal claim, later

10   unexplained orders upholding that judgment or rejecting the same claim rest upon the same

11   ground."  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  Because the California Supreme Court

12   denied petitioner's habeas corpus petition without comment or citation, it found that this claim

13   was barred because it should have been raised on direct appeal.  In the answer, respondent does

14   not argue that this claim is procedurally barred.  Accordingly, the undersigned addresses the

15   merits of this claim.

16       Where the state court denied the petitioner's claim on procedural grounds or did not

17   decide the claim on the merits, the deferential standard of the AEDPA does not apply and the

18   federal court must review the petitioner's claim de novo.  Pirtle v. Morgan, 313 F.3d 1160, 1167

19   (9th Cir. 2002).  Accordingly, the undersigned conducts a de novo review of this claim.

20       Federal habeas relief is available only if the petitioner is contending that he is in custody

21   in violation of the Constitution or laws or treaties of the United States.  See 28 U.S.C. § 2254(a);

22   see also Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("In conducting habeas review, a federal

23   court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the

24   United States.").  In order to establish a due process violation from trial-type error such as the

25   denial of a mistrial motion, petitioner must show that the error resulted in a trial that was

26   fundamentally unfair.  See generally McGuire, 502 U.S. at 75.

27       On February 11, 2008, Mr. Saria made a motion for a mistrial immediately following his

28   reappointment.  (RT at 299.)  Mr. Saria stated that the grounds of his motion were that he did not

know the jurors as he did not participate in voir dire.  (Id. at 300.)  Mr. Saria also noted that two

victims had testified, Officer Becerra as well as Ms. Pace, the victim of the domestic violence and

assault charges.  (Id.)  Mr. Saria renewed his motion at the next court date.  (Id. at 309.)  Mr.

Saria argued that he had no transcript from the prior proceedings.  (Id. at 310.)  Both of these

motions for mistrial were denied.

As noted above, the jury could not reach a verdict regarding the charge for resisting a

peace officer involving Officer Becerra.  In addition, petitioner did not seriously dispute the

damage he did to the police car.  For these reasons, petitioner cannot argue that the trial judge's

denial of his motion for a mistrial as to these charges violated fundamental fairness.

Regarding the charges against the victim, the trial judge allowed Mr. Saria to recall her as

a witness.  Because of the videotape showing petitioner's assault of the victim, Mr. Saria's ability

to present a credible defense was limited.  For these reasons, petitioner has not demonstrated that

the denial of his motion for a mistrial as to the charges against the victim violated fundamental

fairness.

Having conducted a de novo review, for the reasons discussed above, the undersigned

recommends that this claim be denied.

Defense Witness

Petitioner argues that the prosecutor interfered with defense witness William Gantt's

decision whether to testify.[7]  Petitioner raised this claim in his habeas corpus petition filed in the

Superior Court.  The Superior Court denied this claim on grounds that it should have been raised

on appeal.  (See Petition for Writ of Habeas Corpus filed in California Supreme Court; Superior

Court Order to Show Cause at 3 (attached as exhibit)).  The California Supreme Court denied

petitioner's habeas petition without comment or citation.

In the answer, respondent does not argue that this claim is procedurally barred based on

the Superior Court's finding that it should have been raised on appeal.  Accordingly, the

---

[7]  In the answer, respondent characterizes petitioner's claim as arguing that the trial court erred in
finding that Mr. Gantt had grounds to invoke his Fifth Amendment rights.  However, in his state
court habeas actions, on which the instant claim is based, petitioner argued that the prosecutor
interfered with Mr. Gantt's decision whether to testify.

1   undersigned conducts a de novo review of this claim.  Ylst v. Nunnemaker, supra; Pirtle v.

2   Morgan, supra.

3        Defense witness William Gantt invoked his Fifth Amendment right not to testify.  (RT at

4   520.)  Mr. Saria argued that the questions he intended to ask Mr. Gantt had nothing to do with Mr.

5   Gantt's unrelated, ongoing case.  (Id.)  The prosecutor responded that he would ask Mr. Gantt

6   about his moral turpitude conduct and also about things not seen on the video of the incident

7   involving petitioner, about which Mr. Gantt might have concerns.  (Id. at 521.)  The trial judge

8   conducted an in camera hearing with Mr. Gantt's lawyer regarding the substance of Mr. Gantt's

9   Fifth Amendment concerns.  (Id. at 522.)  The transcript from this in camera hearing is sealed and

10  not in the court record.  Following the in camera hearing, the trial judge upheld Mr. Gantt's

11  decision to invoke his Fifth Amendment rights.  (Id. at 525.)

12       In Webb v. Texas, 409 U.S. 95 (1972), the Supreme Court held that the defendant's due

13  process rights were violated when a trial judge's threatening comments caused the sole defense

14  witness to decide not to testify.  However, there is no Supreme Court case law holding that a

15  prosecutor commits misconduct when he or she threatens a defense witness with prosecution and

16  thereby causes the witness to either refuse to testify or invoke the Fifth Amendment.  See Graves

17  v. Swarthout, 2012 WL 860784 at * 2 (9th Cir. 2012).

18       Assuming for the sake of argument that Webb would apply to a case in which the

19  prosecutor made threats similar to those made by the trial judge in Webb, there is no evidence in

20  this case that the prosecutor threatened Mr. Gannt.  In this case, Mr. Gannt had counsel who told

21  the trial judge that Mr. Gannt had Fifth Amendment concerns.  The trial judge found that Mr.

22  Gannt's concerns were valid after the in camera hearing.  There was no claim by Mr. Gannt's

23  counsel that Mr. Gannt had been improperly threatened with prosecution.  The prosecutor,

24  himself, suggested on the record what Mr. Gannt's Fifth Amendment concerns might be.  For

25  these reasons, the undersigned finds that petitioner's claim alleging that the prosecutor interfered

26  with Mr. Gannt's decision regarding whether to testify is without merit.

27       Having conducted a de novo review, for the reasons discussed above, the undersigned

28  recommends that this claim be denied.

1         Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall appoint a

2    district judge to this action;

3         IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas

4    corpus be denied.

5         These findings and recommendations are submitted to the United States District Judge

6    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

7    after being served with these findings and recommendations, any party may file written

8    objections with the court and serve a copy on all parties.  Such a document should be captioned

9    "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

10   he shall also address whether a certificate of appealability should issue and, if so, why and as to

11   which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

12   applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

13   2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after

14   service of the objections.  The parties are advised that failure to file objections within the

15   specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

16   F.2d 1153 (9th Cir. 1991).

17   Dated:  March 19, 2014

18

19   An2964.157                                 KENDALL J. NEWMAN
                                                UNITED STATES MAGISTRATE JUDGE
20

21

22

23

24

25

26

27

28

43